IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| VIAVIENTE TAIWAN, LP, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 4:08-cv-00301 |
| UNITED PARCEL SERVICE, INC., | ) JURY |
| Defendant. | ) |

## DEFENDANT UNITED PARCEL SERVICE, INC.'S ANSWER AND COUNTERCLAIMS

Defendant United Parcel Service, Inc. ("UPS") hereby answers Plaintiff's Original Petition ("Petition").

### I.

### RESPONSES TO SPECIFIC PARAGRAPHS IN THE COMPLAINT

1. Paragraph 1 consists of introductory statements concerning state-specific discovery rules for which no response is required.

2. UPS admits the allegations in Paragraph 2.

3. UPS admits the allegations in Paragraph 3.

**Jurisdiction and Venue**

4. UPS denies the allegations in Paragraph 4 that jurisdiction is proper in the 296th Judicial District of Collin County, Texas, and that the requested relief is within the jurisdictional limits of that Court.

5. UPS denies the allegations in Paragraph 5 that venue is proper in Collin County, Texas, and that all or a substantial part of the events or omissions giving rise to the claim occurred in that County.

## Factual Background

6. UPS admits the allegation in Paragraph 6 that Plaintiff sells a beverage in the country of Taiwan. UPS lacks sufficient knowledge or information to form a belief concerning Plaintiff's allegations that that the beverage is "nutritional" and that it sells the product through a multi-level marketing distribution network. UPS denies the allegation that Plaintiff used UPS to ship its product to customers in Taiwan. UPS provided only transportation and customs clearance services for products shipped to Taiwan by ViaViente.

7. UPS lacks sufficient knowledge or information to form a belief concerning Plaintiff's allegation in Paragraph 7 that Plaintiff relied on "UPS's expertise in international shipping to handle product deliveries in Taiwan." UPS denies the remaining allegations in Paragraph 7.

8. UPS admits the allegation in Paragraph 8 that Plaintiff shipped beverage products in three bottle cases, among other items. UPS denies the allegation that UPS advised ViaViente that the value of the shipped beverage products should be declared at ViaViente's actual cost, rather than ViaViente's sale price. UPS denies the remaining allegations in Paragraph 8.

9. UPS admits the allegation in Paragraph 9 that Taiwanese customs authorities contacted UPS regarding customs valuations for some of Plaintiff's shipments in 2007. UPS is without sufficient knowledge or information to form a belief as to whether Taiwanese customs authorities stopped all of Plaintiff's product shipments, claiming that Plaintiff undervalued its

products. UPS lacks sufficient knowledge or information to form a belief concerning the remaining allegations in Paragraph 9.

10. UPS denies informing Plaintiff that the issue with Taiwanese customs authorities had been "resolved" as alleged in Paragraph 10. UPS admits that Dana Kilgore sent the email correspondence to ViaViente quoted in Paragraph 10. UPS lacks sufficient knowledge or information to form a belief concerning the remaining allegations in Paragraph 10.

11. UPS admits that its counsel sent Plaintiff a letter stating, among other things, that Plaintiff should resolve the customs issue with Taiwanese customs authorities directly, as alleged in Paragraph 11. UPS denies that this letter was dated October 2, 2007. Rather, it was dated September 28, 2007. UPS lacks sufficient knowledge or information to form a belief concerning the remaining allegations in Paragraph 11.

12. UPS admits the allegations in the first sentence of Paragraph 12. In answer to the remainder of Paragraph 12, UPS states that it advised ViaViente that it was prepared to execute a power of attorney that would authorize ViaViente to negotiate directly with Taiwan Customs on behalf of UPS provided certain conditions were met, including ViaViente acknowledging its obligation to indemnify UPS for any amounts imposed by Taiwan Customs and for UPS's legal fees. ViaViente repeatedly ignored UPS's requests, failed to provide this acknowledgement and ultimately filed the Petition that initiated this action.

13. UPS lacks sufficient knowledge or information to form a belief concerning the meaning of "responsible" under Taiwanese law. UPS denies the allegations that it was responsible for customs duties not paid by ViaViente's customers and that UPS failed to provide to Taiwan Customs the names and addresses of the customers receiving ViaViente's shipments.

UPS admits that Taiwan Customs has advised UPS that claims for duties, taxes, penalties, and fees will be made against UPS as the carrier that cleared ViaViente's shipments through Taiwan Customs authorities. UPS lacks sufficient knowledge or information to form a belief concerning the remaining allegations in Paragraph 13.

14.     UPS denies the allegation in Paragraph 14 that it failed to take any reasonable steps to reduce the amount of potential customs liability. UPS denies the allegations that Taiwan Customs agreed to a lower valuation post-March 2007 and that UPS failed to take steps to adequately contest the valuation of the pre-March 2007 shipments. UPS admits that Taiwan Customs has demanded payment of duties, taxes, penalties, and fees on some shipments of ViaViente products. On information and belief, based on amounts Taiwan Customs has already assessed on prior ViaViente shipments to Taiwan, the total claimed by Taiwan Customs could amount to at least $800,000 U.S.

15.     UPS admits that it demanded that Plaintiff pay all sums owed to Taiwan Customs for Plaintiff's shipments into Taiwan as stated in Paragraph 15. UPS admits asserting that Plaintiff is bound by the "UPS Tariff/Terms and Conditions of Service for Small Package Shipments in the United States." UPS admits that this document imposes liability upon ViaViente for customs duties, fines, penalties, liquidated damages or other obligations that the Taiwanese customs authorities assess on ViaViente's shipments in Taiwan. UPS denies the allegation in Paragraph 15 that Plaintiff has not agreed to the terms of that document.

**Cause of Action – Declaratory Relief**

16.     Paragraph 16 re-alleges the factual allegations in the Petition, therefore no further response is required.

17. Plaintiff's allegation in Paragraph 17, that the Texas Declaratory Judgment Act authorizes its claim, is a legal conclusion for which no response is required. To the extent a response is required, UPS denies that Plaintiff is entitled to any relief under that Act. UPS further denies that Plaintiff is entitled to any relief from or against UPS in this action, including the relief requested in Paragraph 17 and its sub-paragraphs.

    a. UPS denies that Plaintiff is entitled to the relief requested in this sub-paragraph.

    b. UPS denies that Plaintiff is entitled to the relief requested in this sub-paragraph.

    c. UPS denies that Plaintiff is entitled to the relief requested in this sub-paragraph.

    d. UPS denies that Plaintiff is entitled to the relief requested in this sub-paragraph.

18. Paragraph 18 is a legal conclusion for which no response is required. To the extent a response is required, UPS denies the Plaintiff is entitled to the relief requested in Paragraph 18.

### Jury Demand

19. Paragraph 19 states Plaintiff's demand for a jury trial for which no response is required.

## II.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

20. Plaintiff's claims are barred by the doctrine of estoppel.

### Second Affirmative Defense

21.  Plaintiff's claims are barred by the doctrine of contributory negligence.

### Third Affirmative Defense

22.  Plaintiff's claims are barred by the doctrine of illegality.

### Fourth Affirmative Defense

23.  Plaintiff's claims are barred by the doctrine of unclean hands.

### Fifth Affirmative Defense

Plaintiff's claims are barred by the doctrine of fraud as described herein:

24.  UPS re-alleges and incorporates Paragraphs 1 through 23.

25.  Plaintiff prepared commercial invoices utilizing a software application that UPS licensed to Plaintiff. On the commercial invoices, Plaintiff identified the seller as ViaViente, the Sold To parties in Taiwan, and the selling prices as thirty U.S. dollars ($30.00) per three (3) bottle pack. The Plaintiff also stated on each invoice that "I hereby certify that the information on this invoice is true and correct and the contents of and value is as stated above."

26.  As alleged in the Original Petition, Plaintiff knew at the time it prepared these commercial invoices that the selling prices charged to and collected from customers in Taiwan were not the same as the actual costs ViaViente listed on those invoices. Plaintiff also knew when it prepared the commercial invoices that its shipments into Taiwan would not require the payment of Taiwanese customs duties and taxes if they were valued at thirty U.S. dollars ($30.00) per three (3) bottle pack and that, if they were valued using the true selling price, ranging from one hundred and forty five ($145.00) to two hundred ($200.00) U.S. dollars per

three (3) bottle pack, ViaViente would be required to pay duties and taxes to Taiwan Customs. UPS relied upon the invoices and the values stated on ViaViente's commercial invoices when preparing customs clearance documents in Taiwan.

27. Plaintiff knowingly misrepresented the true selling prices on its commercial invoices to both UPS and Taiwan Customs. Further, Plaintiff did not inform either UPS or Taiwan Customs of the true selling price.

28. Plaintiff's misrepresentation of the true selling prices violated the WorldShip Agreement, the Carrier Agreement and the incorporated UPS Tariff/Terms and Conditions of Service, all of which governed the contractual relationship between Plaintiff and UPS. Under each of these agreements, Plaintiff is required to certify that the information provided regarding items to be shipped is complete, true, and correct in order to obtain UPS's services. Plaintiff failed to meet that obligation when it undervalued its products.

29. Plaintiff intended UPS to rely upon its certifications in determining whether to accept items for shipment. Plaintiff's certifications were material to UPS's decision to provide services. Plaintiff knew the certifications were false when they were made.

30. UPS justifiably relied on the commercial invoices and the selling prices declared on them when providing customs clearance services in Taiwan.

**Sixth Affirmative Defense**

31. Plaintiff's Petition was filed in the incorrect venue. According to the agreements between ViaViente and UPS, the proper venue for any disputes between the parties is in the

courts of Georgia. Accordingly, UPS is filing a Motion for Transfer of Venue to the Northern District of Georgia, concurrently with this Answer and Counterclaim

WHEREFORE, having fully answered Plaintiff's Original Petition for declaratory relief, UPS prays that this Court deny such relief, that UPS recover its costs incurred in this suit, that UPS receive reasonable attorneys' fees, and for such other and further relief as this Court deems just and proper.

### III.

### COUNTERCLAIMS

UPS, by and through its undersigned counsel, does hereby assert these Counterclaims for Declaratory Judgment and breach of contract, and in support thereof, alleges as follows:

32.    UPS re-alleges and incorporates Paragraphs 1 through 31.

### JURISDICTION AND VENUE

33.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) in that this is a civil action with an amount in controversy exceeding $75,000, exclusive of interest and costs, and the parties are citizens of different states.

34.    Plaintiff filed this suit in the incorrect venue. According to agreements between ViaViente and UPS, the proper venue for any disputes between the parties is in the courts of Georgia. Accordingly, UPS is filing a Motion for Transfer of Venue to the Northern District of Georgia, concurrently with this Answer and Counterclaim.

## PARTIES

35.     Counterclaim Plaintiff United Parcel Service, Inc. ("UPS") is a company organized and existing under the laws of Ohio. UPS is engaged in the domestic and international transportation of goods. UPS is also a licensed customs broker. UPS's principal place of business is Atlanta, Georgia.

36.     Counterclaim Defendant ViaViente Taiwan LP ("ViaViente") is a domestic limited partnership organized and existing under the laws of Nevada. ViaViente's principal place of business is Plano, Texas. ViaViente is a multi-level marketer and distributor of beverage products.

## FACTUAL BACKGROUND

37.     UPS and ViaViente Taiwan LP (under the name ViaViente Ltd.) entered into certain Carrier Agreements whereby UPS agreed to provide transportation services to ViaViente. The Carrier Agreements incorporate by reference the UPS Rate and Service Guide and the UPS Tariff/Terms and Conditions of Service in effect on the shipment date.

38.     Pursuant to the Carrier Agreements, ViaViente is required to provide certain documentation for export and customs clearance and certify that all statements and information relating to exportation and importation are true and correct. The Carrier Agreements make ViaViente liable for all costs incurred as a result of actions by a foreign import or export regulating agency. These costs include, but are not limited to, customs duties, penalties, storage charges, and other expenses. The Carrier Agreements obligate ViaViente to indemnify UPS for any and all claims or liability, including duties, fines, penalties, liquidated damages, or other money due, arising from ViaViente's shipments.

39. Moreover, pursuant to a UPS WorldShip Software License and Access Agreement ("WorldShip Agreement"), ViaViente is required to indemnify and hold UPS harmless from and against all claims, charges, damages, judgments, costs, and expenses – including attorneys' fees – arising out of or related to any incorrect or false statement provided in connection with tendered shipments. ViaViente downloaded, installed, and used UPS's WorldShip software to manage shipments of its beverage products to Taiwan, thereby agreeing to be bound by the terms of the WorldShip Agreement.

40. ViaViente prepared commercial invoices on which it represented the value of products it shipped to Taiwan. ViaViente provided these commercial invoices to UPS and repeatedly utilized UPS as a carrier and customs broker for shipments to Taiwan. UPS transported thousands of packages of ViaViente beverage products to Taiwan pursuant to the Carrier and WorldShip Agreements. UPS acted as the customs broker for these shipments, supplying information about the shipments to customs officials in Taiwan, including valuations based on the amounts listed on commercial invoices and other documents and information provided by ViaViente to UPS.

41. In March 2007, Taiwan Customs officials seized and held over 500 ViaViente packages, finding that they had been undervalued. Taiwan Customs made a demand on UPS, ViaViente's customs broker, for payment of customs duties, taxes, penalties, and fines. ViaViente worked with UPS to resolve the Taiwan Customs claims. As obligated under the Carrier and WorldShip Agreements, ViaViente satisfied the claims and paid the customs duties and taxes owed on these shipments.

42.     Later in 2007, the Taiwan Customs Administration notified UPS that it was liable for customs duties, taxes, penalties, and fines on certain ViaViente beverage products that were not covered by the previous settlement ViaViente reached with Taiwan Customs. Taiwan Customs has alleged that these products were undervalued.

43.     UPS promptly notified ViaViente of the claims made by the Taiwan Customs officials. Although counsel for the parties had several discussions about the Taiwan Customs claims regarding the ViaViente shipments, they did not reach a resolution and ViaViente refused to acknowledge its obligation to indemnify and hold UPS harmless from any claims made by Taiwan Customs.

44.     In 2008, Taiwan Customs issued a written demand to UPS for payment of taxes and duties on certain ViaViente shipments into Taiwan. UPS again notified ViaViente of this demand and requested that ViaViente resolve the matter with Taiwan Customs. ViaViente refused to do so.

45.     By failing to resolve the Taiwan Customs claims, ViaViente has exposed UPS to liability in Taiwan for customs duties, taxes, penalties, and fines. On information and belief, based on the total number of shipments of ViaViente products into Taiwan, Taiwan Customs officials may assess duties and taxes in excess of $ 800,000 U.S. on the ViaViente shipments.

46.     ViaViente's disregard of its contractual obligations to UPS and its undervaluing of its merchandise shipped to Taiwan have exposed UPS to substantial damage.

## COUNT I

**Declaratory Relief as To ViaViente's Contractual Obligation to Indemnify UPS**

47.     UPS re-alleges and incorporates Paragraphs 1-46.

48.     Pursuant to 28 U.S.C. § 2201, an actual justiciable controversy exists as to whether ViaViente must indemnify and hold harmless UPS for customs duties, taxes, penalties, and fines incurred as a result of ViaViente's undervalued merchandise shipped to Taiwan.

49.     ViaViente is a party to multiple contracts with UPS that impose indemnification obligations applicable in circumstances such as those described in ViaViente's Original Petition. Despite repeated attempts by UPS to hold ViaViente to those obligations, ViaViente has refused to indemnify UPS for the claims made by Taiwan Customs.

50.     ViaViente is familiar with its obligations under the Carrier and WorldShip Agreements and performed them as recently as March 2007 when it resolved the claims of Taiwan Customs regarding seized product shipments.

51.     UPS has performed all of its obligations under the Carrier and WorldShip Agreements.

## COUNT II

**Breach of ViaViente's Contractual Obligations to UPS**

52.     UPS re-alleges and incorporates paragraphs 1-51.

53.     The Carrier and Worldship Agreements constitute enforceable contracts between UPS and ViaViente.

54. ViaViente has breached its contractual duties under the Carrier and WorldShip Agreements by undervaluing its beverage products shipped to Taiwan, failing to indemnify and hold harmless UPS for claims asserted by Taiwan Customs, and obtaining UPS's transportation and customs services using incorrect product valuations.

55. UPS has performed all of its obligations under the Carrier and WorldShip Agreements.

56. As a result of ViaViente's breach of the Carrier and WorldShip Agreements, UPS has been damaged.

## RELIEF REQUESTED

WHEREFORE, UPS prays as follows:

1. For a judgment declaring that Plaintiff is obligated to indemnify and hold UPS harmless from any claims made by Taiwan Customs for duties, taxes, and penalties.

2. For reasonable attorneys' fees incurred in connection with this matter both prior to and during this lawsuit.

3. For damages, including compensatory, consequential, punitive, and exemplary damages in an amount to be proved at trial.

4. For such other and further relief as this Court deems just and proper.

Respectfully Submitted,

_____/s/_____

Scott T. Williams
Texas Bar No. 00791937
AKIN GUMP STRAUSS HAUER & FELD LLP
1700 Pacific Avenue, Suite 4100
Dallas, TX 75201
214.969.4257
214.969.4343 facsimile
swilliams@akingump.com

*Counsel for United Parcel Service, Inc.*

Dated: August 22, 2008.

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing document was provided to all counsel of record as indicated below by a Notice of Electronic Filing via the Court's CM/ECF system on this 22nd day of August, 2008:

**VIA CM/ECF**
Ernest Leonard, Esq.
FRIEDMAN & FEIGER, LLP
5301 Spring Valley Road, Suite 200
Dallas, Texas 75254
Telephone: 972.788.1400
Facsimile: 972.776.5313

*Counsel for Plaintiff*

                                         /s/
                                  Scott T. Williams
                                  AKIN GUMP STRAUSS HAUER & FELD, LLP