IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| VIA VIENTE TAIWAN, L.P., | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | Case No. 4:08-cv-301 |
| | § | |
| UNITED PARCEL SERVICE, INC., | § | |
|     Defendant. | § | |

## MEMORANDUM OPINION & ORDER GRANTING
## DEFENDANT'S MOTION TO TRANSFER

Before the court are the following:

1.  Defendant United Parcel Service, Inc.'s Contested Motion for Transfer of Venue to the Northern District of Georgia, Atlanta Division (de # 4);

2.  Plaintiff ViaViente Taiwan, LP's Response to Defendant United Parcel Service, Inc.'s Contested Motion for Transfer of Venue to the Northern District of Georgia, Atlanta Division (de # 10);

3.  Defendant United Parcel Service, Inc.'s Reply to Plaintiff ViaViente Taiwan, LP's Response to Defendant United Parcel Service, Inc.'s Contested Motion for Transfer of Venue to the Northern District of Georgia, Atlanta Division (de # 12); and

4.  Surreply to Defendant United Parcel Service, Inc.'s Reply Regarding Motion for Transfer of Venue (de # 14).

Having considered the Motion, the responsive briefing and the relevant legal principles, the court is of the opinion that the Defendant's Motion should be GRANTED.

### I.  BACKGROUND

This civil action is before the court after having been removed from Texas state court by the Defendant on the basis of the parties' diverse citizenship. The Plaintiff produces nutritional beverages, selling them around the nation and, pertinent to this lawsuit, in Taiwan. The Plaintiff hired the Defendant to ship its product to Taiwan. The parties entered into a "Carrier Agreement"

on November 1, 2005 that required the Plaintiff to "use a UPS OnLine or OnLine compatible shipping solution that is approved and authorized by UPS as such." (Def.'s Reply Ex. A.) The UPS OnLine software allows UPS customers to print shipping labels and manage product shipments from the user's location. (Mot. to Transfer 3.)

Pursuant to the Carrier Agreement, the UPS OnLine software was installed at the Plaintiff's Plano, Texas location. Like many software programs, the UPS OnLine tool requires users to click through a series of screens in order to install the software. One of the screens contains a "License Agreement" that allows the user to scroll through and read the terms. Before proceeding with the installation, the user must click a button indicating his assent to the terms of the License Agreement. After installation, the License Agreement remains available for the user's review by simply clicking the "Help" button that appears on the screen while the program is being used. Section 20(c) of the License Agreement reads, in part, "the exclusive jurisdiction for any action relating to this Agreement shall be a federal or state court in Atlanta, Georgia." (Reply at Ex. D-1.)

Both parties agree that the software was installed by a UPS technician. The Plaintiff contends that its personnel were never required to read the License Agreement and that it, therefore, never agreed to the terms contained therein. The Defendant argues that its ordinary practice is to install the software only in its customer's presence and after the customer indicates acceptance of the terms and conditions of using the software. Accordingly, the court must first determine whether the parties are governed by the License Agreement. If they are so bound, the court must then determine whether the forum selection clause is enforceable.

## II. PLAINTIFF'S OBJECTIONS TO THE EVIDENCE

The Plaintiff objects to the exhibits contained in the Defendant's Reply as violating this

court's Local Rule CV-7(b) which requires that "all affidavits and other pertinent documents shall be served and filed with the motion." The Carrier Agreement was not provided to the court in the Defendant's Motion; only after the Plaintiff objected to its absence from the Motion did the Defendant provide the court with a copy of the Carrier Agreement. The court overrules this objection for two reasons. First, the Federal Rules are to "be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding." FED. R. CIV. P. 1. Failing to consider relevant evidence on the technicality that it was appended to the Reply and not the Motion can hardly be said to be just. Second, and more importantly, the Plaintiff can complain of no prejudice resulting from the attachment of the Carrier Agreement to the Defendant's Reply. In another setting, the Fifth Circuit has stated that "merely having to prove matters" that had previously been deemed admitted does not constitute prejudice. *Le v. Cheesecake Factory Rests., Inc.*, No. 06-20006, 2007 U.S. App. LEXIS 5232, at *9 (5th Cir. March 6, 2007). That lesson is instructive in this setting. Simply having to confront evidence, the existence of which was already known by the Plaintiff and that the Plaintiff would certainly have had to address in the absence of an oversight by opposing counsel, cannot be said to prejudice the Plaintiff. As to the Plaintiff's other objections, the court has given them consideration, and it will review the evidence provided in accordance with the appropriate standards.

### III. DISCUSSION AND ANALYSIS

For parties to enter into a valid contract,[1] the following elements must be in place: "(1) an

---

[1] The court finds the License Agreement to be a so-called "clickwrap" agreement. Clickwrap agreements require a user affirmatively to manifest assent to conditions proposed by the software provider in order to continue with the installation of the software. *Recursion Software, Inc. v. Interactive Intelligence, Inc.*, 425 F. Supp. 2d 756, 782 n.14 (N.D. Tex. 2006). This court and others have upheld the validity of such agreements. *E.g.*, *id*. at 783 (applying

offer; (2) acceptance; (3) meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with the intent that it be mutual and binding." *Cessna Aircraft Co. v. Aircraft Network, L.L.C.*, 213 S.W.3d 455, 465 (Tex. App.—Dallas 2006, pet. denied). Texas courts, like probably those in every other state in the union, look to the parties' objective indications in determining whether a meeting of the minds existed rather than relying on the parties' unexpressed, later expressed or subjective intentions. *Copeland v. Alsobrook*, 3 S.W.3d 598, 604 (Tex. App.—San Antonio 1999, pet. denied). As mentioned earlier, the Plaintiff argues that there was no meeting of the minds because it was never able to review, and thus agree to, the terms of the License Agreement.

In this instance, the Plaintiff's actions belie the argument that they did not agree to the terms of the License Agreement. First, the Carrier Agreement obligated the Plaintiff to use the UPS OnLine software program. That installation of the UPS OnLine tool required the completion of a click-through set up process that included terms of service would hardly be a surprise to anyone who has ever installed software on a computer, much less the employees of a sophisticated company which boasts international operations. The Plaintiff should have been aware that terms of service were forthcoming upon the installation of the program required by the Carrier Agreement. Second, it is difficult to believe that the Plaintiff would have allowed the Defendant's technician unsupervised access to its computers to install the program, which would have had to have been the case for the Plaintiff to have been completely unaware that the use of the UPS OnLine tool required acceptance of the License Agreement. Not only would such a sequence of events be difficult to believe, but it runs contrary to the Defendant's ordinary procedures. (Reply at Ex. C.) Finally, and

---

Texas law); *Realpage, Inc. v. EPS, Inc.*, 560 F. Supp. 2d 539, 545 (E.D. Tex. 2007) (same).

most importantly, the Plaintiff used the program to conduct its business, keeping the benefit of the bargain (presumably convenience and palatable shipping costs). To allow the Plaintiff to benefit from portions of the contract while allowing it to disavow others would be inequitable. *See In re BP Prods. N. Am., Inc.*, 244 S.W.3d 840, 846 (Tex. 2008). Accordingly, the court finds that the License Agreement is binding upon the parties. The court now turns to the enforceability of the forum selection clause.

A motion to transfer premised on a forum selection clause in a contract can be decided under Rule 12(b)(3), *Lim v. Offshore Specialty Fabricators, Inc.*, 404 F.3d 898, 902 (5th Cir. 2005), or under 28 U.S.C. § 1406. *Int'l Software Systems v. Amplicon*, 77 F.3d 112, 114 (5th Cir. 1996). The Defendant's Motion is made under Section 1406, and the court proceeds as such. The validity of a forum selection clause is determined under federal law where the court sits, as it does here, in diversity. *Haynsworth v. Corporation*, 121 F.3d 956, 962 (5th Cir. 1997). In this Circuit, forum selection clauses are *prima facie* valid unless shown to be unreasonable under the circumstances by the party seeking to avoid enforcement. *Int'l Software Systems*, 77 F.3d at 114. Potential unreasonableness exists where:

> (1) the incorporation of the forum selection clause into the agreement was the product of fraud or overreaching; (2) the party seeking to escape enforcement "will for all practical purposes be deprived of his day in court" because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) enforcement of the forum selection clause would contravene a strong public policy of the forum state.

*Haynsworth*, 121 F.3d at 963 (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991)).

The Plaintiff has made no showing that any of the above-mentioned factors are in play in this case. There is no indication that the clause is anything more than one of several terms in a contract

reached by two companies during their normal courses of business. Accordingly, the court finds that the forum selection clause should be enforced. Section 1406 provides for either dismissal of the lawsuit or "if it be in the interest of justice, transfer [of] such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a) (2006). The decision as to which mechanism is appropriate is left to the discretion of the district court. *Pugh v. Arrow Elecs., Inc.*, 304 F. Supp. 2d 890, 896 (N.D. Tex. 2003). The court finds that the interest of justice is furthered by transfer rather than dismissal for two reasons. First, nothing is to be gained by requiring the parties to incur the administrative costs of initiating a new lawsuit. Second, the Defendant has requested a transfer, and neither party has discussed the possibility of a dismissal. Thus, transfer is the mechanism that coincides with the expectations of the parties.

### IV. CONCLUSION

Based on the foregoing, the court finds that the parties entered into a valid and binding contract, the contract contained a forum selection clause and the forum selection clause is enforceable. Accordingly, the court is of the opinion that "Defendant United Parcel Service, Inc.'s Contested Motion for Transfer of Venue to the Northern District of Georgia, Atlanta Division" (de # 4) should be, and hereby is, GRANTED. This civil action is hereby TRANSFERRED to the United States District Court for the Northern District of Georgia, Atlanta Division for further proceedings.

IT IS SO ORDERED.

**SIGNED this the 17th day of February, 2009.**

_____
RICHARD A. SCHELL
UNITED STATES DISTRICT JUDGE